AO 243 (Rev. 01/15)                                                                                          Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District SOUTHERN DISTRICT OF FLORIDA | |
|---|---|---|
| Name *(under which you were convicted)*: <br> JAIME ALBERTO TAMAYO LOPEZ | | Docket or Case No.: <br> 1:13-20899-CR-ZLOCH |
| Place of Confinement: <br> CCA McRAE CORRECTIONAL FACILITY | Prisoner No.: <br> 19987-038 | |
| UNITED STATES OF AMERICA <br> V. | Movant *(include name under which convicted)* <br> JAIME ALBERTO TAMAYO LOPEZ | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
   UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

   (b) Criminal docket or case number (if you know): 1:13-20899-CR-ZLOCH

2. (a) Date of the judgment of conviction (if you know): 03/18/2016

   (b) Date of sentencing: JUNE 29, 2016

3. Length of sentence: 120 MONTHS

4. Nature of crime (all counts):

   COUNT 1:
     18;1956 (H) CONSPIRACY TO COMMIT MONEY LAUNDERING.

   COUNT 2:
     21;959 (A) (2) CONSPIRACY TO DRUG TRAFICKING OF 5 KILOGRAMS OF
   COCAINE KNOWING THAT THE COCAINE WOULD BE UNLAWFULLY IMPORTED INTO
   THE UNITED STATES.

   FILED BY ___ D.C.
   JUN 24 2019
   ANGELA E. NOBLE
   CLERK U.S. DIST. CT.
   S. D. OF FLA. - FT. LAUD.

5. (a) What was your plea? (Check one)
     (1) Not guilty ☐        (2) Guilty ☒        (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☐    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐    No ☐

8. Did you appeal from the judgment of conviction?   Yes ☐    No ☒

AO 243 (Rev. 01/15)                                                                                          Page 3

9.  If you did appeal, answer the following:    N/A

    (a)  Name of court: _____

    (b)  Docket or case number (if you know): _____

    (c)  Result: _____

    (d)  Date of result (if you know): _____

    (e)  Citation to the case (if you know): _____

    (f)  Grounds raised:




    (g)  Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☒

        If "Yes," answer the following:

        (1)  Docket or case number (if you know):  N/A _____

        (2)  Result: _____

        (3)  Date of result (if you know): _____

        (4)  Citation to the case (if you know): _____

        (5)  Grounds raised:




10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐      No ☒

11.  If your answer to Question 10 was "Yes," give the following information:

    (a)  (1) Name of court:        N/A _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4)  Nature of the proceeding: _____

        (5)  Grounds raised: _____

AO 243 (Rev. 01/15)

**GROUND ONE:** ___PLEASE SEE ATTACHED PAGES_____

 

 

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

          PLEASE SEE ATTACHED PAGES

 

 

(b) **Direct Appeal of Ground One:**

  (1) If you appealed from the judgment of conviction, did you raise this issue?

     Yes ☐     No ☐

  (2) If you did not raise this issue in your direct appeal, explain why:

 

 

(c) **Post-Conviction Proceedings:**

  (1) Did you raise this issue in any post-conviction motion, petition, or application?

     Yes ☐     No ☑

  (2) If you answer to Question (c)(1) is "Yes," state:

  Type of motion or petition: ___N/A_____

  Name and location of the court where the motion or petition was filed:

  Docket or case number (if you know): _____

  Date of the court's decision: _____

  Result (attach a copy of the court's opinion or order, if available):

 

  (3) Did you receive a hearing on your motion, petition, or application?

     Yes ☐     No ☐

  (4) Did you appeal from the denial of your motion, petition, or application?

     Yes ☐     No ☐

  (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

     Yes ☐     No ☐

<u>Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)</u>
<u>Jaime Tamayo Lopez, Reg. No. 19987-038</u>
<u>Page 5.1</u>

**A. GROUND ONE:**

      DEA S/A JOSE IRIZARRY WAS A CORRUPT AGENT WHO ILLEGALLY "MANUFACTURED JURISDICTION"* IN ORDER TO CREATE A FEDERAL CASE AGAINST ME.

      Recent media reports confirm that <u>DEA Special Agent Jose Irizarry</u> has been dismissed by the Drug Enforcement Administration because he is the subject of an ongoing internal investigation into allegations that, while he was stationed in Colombia, he fabricated federal cases against unsuspecting Colombian citizens, laundered at least seven million dollars and corruptly assisted Colombian drug-traffickers. (<u>See attached articles</u>).

      I am <u>certain</u> that I am one of <u>S/A Irizarry's</u> victims.

      Your records and files will confirm that in 2013, I was served with a federal indictment in La Picota Prison, Bogota, Colombia, as I was completing a Colombian sentence for money laundering. I fought extradition to the United States until 2015

**Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)**
**Jaime Tamayo Lopez, Reg. No. 19987-038**
**Page 5.2**

when I was transferred to Fort Lauderdale, Florida. In 2016, I pled guilty to Conspiracy to Commit Money Laundering and importing cocaine into United States and was later sentenced to 120 months in federal prison.

Your records and files will also reflect that the case against me was created entirely by the unilateral actions of S/A Irizarry. Specifically, S/A Irizarry wanted to make a name for himself so he used his position, authority and influence within the DEA to assist his Colombian drug-trafficking associates in getting their criminal cases in the United States resolved. The following is an account of how my case was created by S/A Irizarry.

In 2012, I was a partner in a small business which exported fruits from Peru to several European countries. My partners were Italian Vincenzo Aprea (who was in Holland), Colombians Miguel Brandon Peñaranda Diaz, John Alexander Herrera Nariño (who were in Bogota, Colombia) and a Colombian from

**Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)**
**Jaime Tamayo Lopez, Reg. No. 19987-038**
**Page 5.3**

Cali, Colombia, Rodrigo Mora Olaya (who was in Lima, Peru). At the same time, my partners and I were considering a plan to also send cocaine to Europe hidden within the fruits. However, this illicit plan never materialized because we had discovered that our fruit-exporting business had become the target of an investigation by the DEA and the Peruvian police.

S/A Irizarry learnt about our proposed illicit fruit/cocaine proposal through a Colombian DEA informant named Jesus Martinez who owned and operated a Money Exchange and Transfer business. As a result, S/A Irizarry set out to create a federal case against me and several of my partners.

The financing for the proposed fruit/cocaine trafficking operation required a total of €1, 800,000 (Euros) which would be provided by my partners, Italian Vincenzo Aprea and Colombian Miguel Brandon Peñaranda Diaz. We routinely utilized informant Jesus Martinez's Money  Exchange  and

<u>Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)</u>
<u>Jaime Tamayo Lopez, Reg. No. 19987-038</u>
<u>Page 5.4</u>

Transfer business so this was the ideal vehicle for <u>S/A Irizarry</u> to put his nefarious plan into action.

In order to initiate his plan, <u>S/A Irizarry</u> used informant Jesus Martinez and Jose Luis Uribe Arango from the Money Exchange and Transfer, to contact my partner in Bogota, Colombia, John Alexander Herrera Nariño, and suggested that Jesus Martinez, the informant, had the ways, means and ability to transport the €1, 800,000 for the proposed fruit/cocaine trafficking operation from my partners in Europe to Peru. An agreement was made between informant Jesus Martinez, Jose Luis Uribe Arango and Alexander Herrera Nariño to carry the entire €1, 800,000 <u>directly</u> to Lima, Peru. <u>This was the point at which S/A Irizarry injected himself into our proposal.</u> <u>S/A Irizarry</u> travelled to Holland where he personally received the €1,800,000 from Aprea's people and, instead of carrying it directly to Peru as previously agreed, S/A  Irizarry wired

<u>Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)</u>
<u>Jaime Tamayo Lopez, Reg. No. 19987-038</u>
<u>Page 5.5</u>

$250,000 from a bank account in Holland to an account in Miami, Florida.

This specific act by <u>S/A Irizarry</u> himself, without any knowledge, collaboration or consent by me or any of my partners, effectively manufactured federal jurisdiction which would permit <u>S/A Irizarry</u> to create a conspiracy case against us. <u>Having done so, it is notable that S/A Irizarry then personally carried the remaining €1,550,000 directly from Amsterdam, Netherlands to Lima, Peru.</u>

As an experienced federal agent, <u>S/A Irizarry</u> had foreknowledge that carrying the money <u>directly</u> from the Netherlands to Peru would deprive the United States of any jurisdiction over such a transaction, thus there would be no federal crime. Therefore, <u>S/A Irizarry</u>, in fact and in law, created this federal crime himself when he, on his own volition, and without our knowledge or consent, transferred $250,000 from

**Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)**
**Jaime Tamayo Lopez, Reg. No. 19987-038**
**Page 5.6**

a bank account in Amsterdam to an account in Miami, Florida. I never knew who eventually received the $250,000 that was transferred or what eventually happened to it.

Clearly, this wire-transfer was not the intent of me or any of my partners and was not reasonably foreseeable to us but was done solely by S/A Irizarry to "manufacture jurisdiction" which enabled the United States to indict us on federal charges. This illegal "manufacture" of United States federal jurisdiction was made possible only by the deliberate, predetermined and calculated actions of S/A Irizarry in order to personally assure our federal Indictment and to advance his personal agenda.

It must not be overlooked that my Colombian partner in Peru, Rodrigo Mora Olaya, was the person who met, spoke with and organized all of the money transfers and received the remaining €1,550,000 in Lima, Peru, from S/A Irizarry. Olaya was also in charge of all of the drug exportations from Lima,

**<u>Motion Pursuant to Title 28 U.S.C. § 2255(f) (4)</u>**
**<u>Jaime Tamayo Lopez, Reg. No. 19987-038</u>**
**<u>Page 5.7</u>**

Peru, but if you review my Indictment and the court's record and files, he is never mentioned in my case. In point and in fact, **<u>S/A Irizarry</u>** personally selected and cherry-picked those persons who would be indicted and those who wouldn't, thereby acting as judge, jury and executioner, all by himself.

     * See <u>United States v. Capshaw</u>, 440 Fed.Appx. 738 (11th Cir. 2011) and <u>United States v. Pettis</u>, 379 Fed.Appx. 864 (11th Cir. 2010).

AO 243 (Rev. 01/15)

(6)   If your answer to Question (c)(4) is "Yes," state:   N/A

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:   N/A

**GROUND TWO:**   N/A

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Two:**  N/A

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

AO 243 (Rev. 01/15)                                                                                                    Page 7

(2)  If you answer to Question (c)(1) is "Yes," state:   N/A

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):



(3)  Did you receive a hearing on your motion, petition, or application?   N/A

       Yes [ ]        No [ ]

(4)  Did you appeal from the denial of your motion, petition, or application? N/A

       Yes [ ]        No [ ]

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? N/A

       Yes [ ]        No [ ]

(6)  If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed:

                                                N/A
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):



(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue:              N/A




**GROUND THREE:**       N/A
_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):  N/A

AO 243 (Rev. 01/15)                                                                                                          Page 8

**(b) Direct Appeal of Ground Three:**   N/A

   (1)   If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☐   No ☐

   (2)   If you did not raise this issue in your direct appeal, explain why:

**(c) Post-Conviction Proceedings:**   N/A

   (1)   Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ☐   No ☐

   (2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   N/A

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

   (3)   Did you receive a hearing on your motion, petition, or application? N/A

      Yes ☐   No ☐

   (4)   Did you appeal from the denial of your motion, petition, or application?   N/A

      Yes ☐   No ☐

   (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? N/A

      Yes ☐   No ☐

   (6)   If your answer to Question (c)(4) is "Yes," state:   N/A

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 243 (Rev. 01/15)

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:  N/A

**GROUND FOUR:**   ____N/A____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?  N/A
Yes ☐      No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:  N/A

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?  N/A
Yes ☐      No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:  N/A

Type of motion or petition:  _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know):  _____

Date of the court's decision:  _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application? N/A

Yes ☐        No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?   N/A

Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? N/A

Yes ☐        No ☐

(6)   If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:   N/A

_____

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

N/A

_____

14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?        Yes ☐        No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.        N/A

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

JOHN EDWIN BERGENDAHL, INGRAHAM BUILDING, 25 S.E. Av. Suite 1100 Miami, FL

(b) At the arraignment and plea:

MICHAEL DAVID SPIVACK, FEDERAL PUBLIC DEFENDER'S OFFICE, FORT LAUDERDALE, FL

(c) At the trial:

N/A

(d) At sentencing:

MICHAEL DAVID SPIVACK, FEDERAL PUBLIC DEFENDER'S OFFICE, FORT LAUDERDALE, FL

(e) On appeal:

N/A

(f) In any post-conviction proceeding:

N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:

N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?       Yes ☐       No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?       Yes ☐       No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed:   N/A

(c) Give the length of the other sentence:   N/A

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?       Yes ☐       No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*
BECAUSE OF THE NEWLY DISCOVERED EVIDENCE CONCERNING D.E.A S/A JOSE IRIZARRY.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of −

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)                                                                                                        Page 13

Therefore, movant asks that the Court grant the following relief:

_CONVICTION BE VACATED AND BE GRANTED IMMEDIATE RELEASE_
or any other relief to which movant may be entitled.

N/A
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____06/18/19_____.
(month, date, year)

Executed (signed) on _____ (date)

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Print          Save As...          Add Attachment                    Reset

# D.E.A. Is Investigating a Former Agent on Misconduct Allegations

By Ali Watkins

April 20, 2018

WASHINGTON — The Drug Enforcement Administration is investigating a former agent who was previously stationed in Colombia for misconduct, an American law enforcement official said on Friday.

The former agent, Jose Irizarry, abruptly quit his position at the D.E.A. and is suspected of passing information to Colombian drug traffickers, according to BuzzFeed News, which first reported the investigation.

"███e matter remains ongoing within the D.E.A. disciplinary system, ██d we cannot comment at this time," said Melvin Patterson, an agency spokesman.

The allegations against Mr. Irizarry could make it more difficult for United States law enforcement officials to earn the trust of confidential informants in the shadowy world of drug trafficking. In some Latin American countries like Colombia, where cartels rule with force, cooperating with law enforcement almost certainly spells a death sentence.

<u>0</u>

# DEA's Colombia post roiled by misconduct probes

**By Jim Mustian and Joshua Goodman, Associated Press**
**Wednesday, Oct. 3, 2018 | 2:27 p.m.**

BOGOTA, Colombia — New turmoil has roiled the U.S. Drug Enforcement Administration's high-profile office in Colombia, where at least three agents have left in recent months amid investigations into alleged misconduct, including accusations that one passed secrets to drug cartels and another used government resources to hire prostitutes.

The DEA's top-ranking official in South America, who was brought in three years ago in the wake of a scandal involving agents participating in sex parties with prostitutes, is under investigation after the agency received an anonymous complaint saying he directed Colombian drivers working for the U.S. Embassy in Bogota "to procure sex workers," according to a copy of the complaint obtained by The Associated Press and one current and one former law enforcement official. The officials spoke to the AP on the condition of anonymity because they were not authorized to discuss an ongoing investigation.

Richard Dobrich, a regional director who is retiring from the DEA next month to take a private sector job, said in a statement and interview with the AP that the complaint is without merit and he would have to be a "complete idiot" to engage in prostitution given the office's history. He also denied his departure has anything to do with the accusation.

"There is nothing to this — zero," Dobrich said of the anonymous complaint, adding he wants another probe into how it got out. Dobrich said he believes this "attempted assassination on my reputation" is a setup, perhaps by a disgruntled former DEA employee.

Dobrich said investigators from the Justice Department's Office of Inspector General interviewed him at his office in Colombia last month and seized his phone as a matter of routine. Dobrich said he was later told by an investigator that no misconduct was found, but neither the OIG nor the investigator named by Dobrich would comment on the status of the investigation.

DEA spokeswoman Mary Brandenberger did not respond to emailed questions about Dobrich's departure but wrote that the agency "takes very seriously any allegations of wrongdoing or misconduct by our employees."

Prostitution is legal in Colombia, but Justice Department policy forbids DEA agents from engaging in such activity because it could lead them to be compromised by the very drug cartels they are pursuing.

Armando Ruiz, a retired Colombian police officer who has served as Dobrich's driver for three years, said he never saw his boss interact with prostitutes or do anything unbecoming.

"Unfortunately, when you're in a position like his, there's a lot of people who act out of hatred," Ruiz said.

The scrutiny comes at an already fraught time for the DEA's Bogota office, which is critical to the U.S. efforts to control drug trafficking. Cocaine production — and seizures — in Colombia surged

to a record high last year, a subject likely to come up when President Donald Trump visits the country in November as part of his first trip to Latin America.

Federal authorities are also investigating Jose Irizarry, a former DEA agent assigned to Colombia who has been accused of passing intelligence to cartels, according to several law enforcement officials familiar with the matter. The officials spoke on condition of anonymity because they were not authorized to discuss an ongoing investigation. BuzzFeed News originally reported the allegations against Irizarry in April.

Irizarry was hired by the DEA in the U.S. despite indications that he didn't answer truthfully a polygraph exam he took upon admission, according to two U.S. officials familiar with the case. They spoke on condition of anonymity because the investigation into his alleged criminal activity is ongoing.

Irizarry abruptly quit the DEA this year after his tour in Cartagena, Colombia, was curtailed and he was sent to the United States. Attempts by the AP to reach Irizarry by phone were not successful and it was not clear whether he has a lawyer.

The DEA also received an anonymous complaint in recent months that accused Dobrich's deputy, Jesse Garcia, of having a sexual relationship with a subordinate. That complaint, a copy of which was also obtained by the AP, said Dobrich had been made aware of the relationship — a claim Dobrich denies — and that "favoritism has created a low morale within the admin staff" in Bogota.

Garcia, who retired shortly after the complaint was filed, could not be reached for comment. Possible phone numbers for him in Bogota rang unanswered.

Dobrich's tenure as the top executive in Colombia began in 2015, when he was brought in to restore order after a blistering Inspector General's report found several DEA agents had participated in "sex parties" with prostitutes hired by Colombian cartels. That scandal prompted the suspension of several agents and the retirement of Michele Leonhart, the DEA's administrator at the time.

Prior to Bogota, Dobrich oversaw the DEA's military-style FAST teams that battled drug traffickers in Afghanistan and Latin America, and were criticized for a series of fatal shootings in Honduras in 2012, including one in the town of Ahuas that left four civilians dead.

The DEA disbanded the Foreign-Deployed Advisory and Support Team last year following a joint State and Justice Department inspectors general probe that found the DEA — and Dobrich — misrepresented significant aspects of the shooting to Congress and government investigators.

The DEA and Dobrich have maintained for years that the FAST squad in question had been fired upon by drug traffickers in a passenger boat who had been trying to recover narcotics seized during the operation.

But video of the shooting strongly suggested to outside experts that the antidrug unit opened fire first, according to the IGs' report. The inspectors general found Dobrich's accounting of the shooting to be "unsupportable" based on their own review of the footage.

Dobrich, in his statement to the AP, likened the anonymous prostitution complaint to the insurgents he encountered serving with the FAST team in Afghanistan, where he was shot in the line of duty in 2010, earning a Purple Heart.

"I am used to being able to detect where enemy fire is coming from in order to protect myself and teammates," Dobrich said. "I am not accustomed to confronting the cowardice of anonymous and fictitious allegations."

*Mustian reported from New York. AP News Editor James Martinez in New York contributed to this report.*

**0**

by Taboola
Sponsored Links



**ALL EVENTS ON WEDNESDAY »**

[1:12 PM, 2/6/2019] +1 (978) 237-1615: Print Article

AA

While living in Cartagena, Colombia, Jose Irizarry allegedly held lavish yacht parties with bikini-clad prostitutes. He took first-class flights to Europe and brought along some Louis Vuitton luggage and a gold Hublot watch. He funded his lifestyle by stealing cash from Colombian drug dealers and engaging in schemes to launder money between Colombia and South Florida.

He was also a top U.S. Drug Enforcement Agency employee.

RELATED STORIES

Miami's Five Craziest Stories of Public Corruption and Malfeasance in 2018

The Five Funniest Bribes in Recent Miami History

Colombian Anti-Corruption Head Gets Four Years in Prison After Bribe in Miami Mall Bathroom

Last September, the federal government charged Gustavo Yabrudi, a dual Venezuelan-American citizen, in Tampa federal court with conspiracy to commit money laundering. Yabrudi has since pleaded guilty. But court documents in those cases list four "co-conspirators" who worked alongside Yabrudi in South Florida and Latin America: Three of those four lived in Miami-Dade County, according to court records. "Co-conspirator 3" was listed as "a resident of Miami-Dade County, Florida, and Colombia who worked as a Special Agent for the United States Drug Enforcement Agency (DEA)."

The Associated Press yesterday reported that Irizarry was the third conspirator and that Yabrudi had been working as Irizarry's DEA informant. (Witnesses said in court transcripts that Yabrudi helped arrange money "pick-ups" between drug dealers and undercover DEA agents.) Unnamed sources within the federal government told the AP that Irizarry is now the subject of a criminal probe and that his alleged corruption scheme is one of the biggest black eyes in DEA history. Given Colombia's status as a haven for drug traffickers, the agency considers its Colombian offices some of the most important in its (failed) global War on Drugs. Irizarry was described as a "star" agent in Miami who racked up tons of high-profile arrests before he was promoted and moved to Cartagena. He declared bankruptcy in 2010 but, by the time he moved to Colombia, was somehow throwing yacht parties. His second wife was also reportedly relate

IF YOU LIKE THIS STORY, CONSIDER SIGNING UP FOR OUR EMAIL NEWSLETTERS.

SHOW ME HOW

New Times could not independently confirm the AP's details. But court documents allege the five conspirators would skim cash from Colombian drug sales in the United States, ship it back to Colombia, and convert it to Colombian pesos using extremely favorable, black-market Colombian money-exchange programs. The feds said the group moved $7 million that way. In some cases, the group allegedly used a Miami-based cell-phone company to buy goods using dirty money and then export the phones to

Colombia to be sold for pesos. Prosecutors also stated in recent court filings that Yabrudi worked with Irizarry to open bank accounts across Florida, into which the two deposited money from drug sales.

Court records allege Irizarry also helped the group steal funds from the DEA.

"I...

[1:13 PM, 2/6/2019] +1 (978) 237-1615: APNewsBreak: Feds say 'star' DEA agent abroad stole millions

By JOSHUA GOODMAN and JIM MUSTIAN - Associated Press - Tuesday, January 15, 2019

MIAMI (AP) - A U.S. federal narcotics agent known for his expensive tastes and high-profile drug seizures has been implicated in a multimillion-dollar money-laundering conspiracy that involved the very cartel criminals he was charged with fighting in Colombia.

A once standout Drug Enforcement Administration agent, Jose Irizarry is accused of conspiring with a longtime DEA informant to launder more than $7 million in illicit drug proceeds, sometimes using an underground network known as the black-market peso exchange, according to five current and former law enforcement officials.

The officials described the case as one of the biggest black eyes in the history of the DEA, an agency that has seen repeated scandals in recent years, and one they fear could have compromised undercover operations in the U.S. and South America.

The conspiracy not only allegedly enriched Irizarry but is believed to have benefited one of South America's top money launderers, who is a relative of Irizarry's Colombian wife, said the officials, who spoke to The Associated Press on the condition of anonymity because they were not authorized to discuss the federal investigation.

The allegations have sent shockwaves through the DEA and drawn new scrutiny to the agency's Colombia field office, a critical outpost that has been steeped in turmoil in recent years. The division has seen internal strife and turnover in leadership even as it grapples with record-high levels of cocaine production.

Some of the details emerged in a federal case in Tampa, Florida, in which a former DEA informant, Gustavo Yabrudi, a dual Venezuelan-American citizen, recently pleaded guilty to money laundering. That case refers to an unnamed "co-conspirator 3" - a suspect who is in fact Irizarry, the five officials said.

It is unknown where the 44-year-old Irizarry is living, or whether he has been charged in the ongoing criminal probe. Repeated messages seeking comment left on a cellphone number the law enforcement officials said belongs to Irizarry were not returned.

Chad Van Horn, a Miami attorney who represented Irizarry in a bankruptcy case, said he had no comment and could provide no assistance in efforts to reach him. Barry Wax, a Miami defense attorney who has also represented Irizarry, did not return phone calls and emails seeking comment.

A DEA spokeswoman said Irizarry resigned from the agency after he was recalled from Colombia to Washington in 2017 but declined further comment.

MORE IN HOME

LEAVE A COMMENT

While living in Cartagena, Colombia, Jose Irizarry allegedly held lavish yacht parties with bikini-clad prostitutes. He took first-class flights to Europe and brought along some Louis Vuitton luggage and a gold Hublot watch. He funded his lifestyle by stealing cash from Colombian drug-dealers and engaging in schemes to launder money between Colombia and South Florida. He was also a top U.S. Drug Enforcement Agency employee. Continue ReadingLast September, the federal government charged Gustavo Yabrudi, a dual Venezuelan-American citizen, in Tampa federal court with conspiracy to commit money-laundering. Yabrudi has since pleaded guilty. But court documents in those cases list four "co-conspirators" who worked alongside Yabrudi throughout South Florida and Latin America: Three of those four lived in Miami-Dade County, according to court records. "Co-conspirator 3" was listed as "a resident of Miami-Dade County, Florida, and Colombia who worked as a Special Agent for the United States Drug Enforcement Agency (DEA)." The Associated Press yesterday reported that Irizarry was that third conspirator, and that Yabrudi had been working as Iziarry's DEA informant. (Witnesses said in court transcripts that Yabrudi helped arrange money "pick-ups" between drug-dealers and undercover DEA agents.) Unnamed sourced within the federal government told the AP that Irizarry is now the subject of a criminal probe, and that his alleged corruption scheme is one of the biggest black eyes in DEA history. Given Colombia's status as a haven for drug traffickers, the agency considers its Colombian offices some of the most important in its (failed) global War on Drugs. Irizarry was reportedly a... [Read full story

# A Veteran DEA Agent Is Under Investigation In Colombia For Serious Corruption Allegations

The investigation into Jose Irizarry comes as the agency has been battered by multiple misconduct and corruption allegations.



**Aram Roston**
BuzzFeed News Reporter
Posted on April 20, 2018, at 9:37 a.m. ET

- Tweet
- Share
- Copy

*Eric Kayne / Getty Images*

The US Drug Enforcement Administration is investigating corruption allegations against an agent suspected of providing intelligence on multiple cases to Colombian drug traffickers, three sources familiar with the probe told BuzzFeed News. The sources said the scope of the case is believed to be unprecedented in the agency's history.

Investigators, they said, are probing a crucial question: Were any investigations or confidential informants compromised? "It's a major case," said one of the sources, who works with the DEA. "It's big," said another.

The news comes just as the DEA says Colombia's cocaine production is soaring.

ADVERTISEMENT

A DEA spokesperson confirmed Tuesday that the agency is investigating the veteran agent, who recently resigned. "We are looking into his activities in Colombia," the spokesperson said. She said the investigation is being conducted by the DEA's Office of Professional Responsibility, which functions as its internal affairs unit. Asked how big the investigation was, she said, "The scope is unclear."

A veteran DEA agent is under investigation for allegedly passing off intelligence to Colombian drug traffickers, U.S. Drug Enforcement Administration officials revealed on Friday

Jose Irizarry, a former DEA agent who was stationed in Colombia, abruptly resigned his position with the agency Friday after the allegations surfaced,  per

Aram Roston, of Buzzfeed News, who first reported the investigation.

Sources told the news site that the allegations against Jose Irizarry could compromise U.S. law enforcement's efforts to recruit confidential informants used to gather sensitive intelligence within the shadowy underworld surrounding international drug trafficking.

Any individual caught cooperating with authorities face certain death in countries such as Mexico and Colombia where ruthless drug cartels rule the landscape and hold massive influence.

Confidential sources remain a crucial mechanism for U.S. law enforcement officials to harvest vital intelligence for investigations against transnational drug trafficking organizations.

However, in recent years, the ability of U.S. Drug Enforcement Agency to protect the safety of informants has been seriously questioned in recent years after several scandals involving agent misconduct embroiled the agency.

Recently, Democratic lawmakers on Capitol Hill demanded an inquiry into DEA-led operations in Mexico, after U.S. law enforcement officials shared intelligence with Mexican authorities, which ultimately ended up in the hands of top cartel bosses, resulting in two deadly attacks.

Moreover, a 2015 report by the Justice Department's internal watchdog, implicated DEA officials stationed in Colombia for misconduct after several agents were busted attending sex parties paid for by drug cartels leaders over a period of several years.

One of the three sources said that the Department of Justice Office of the Inspector General and the FBI were investigating the agent. Both of those offices declined to comment.

## Got a tip? You can email tips@buzzfeed.com. To learn how to reach us securely, go to tips.buzzfeed.com.

The 43-year-old agent, Jose Irizarry, was based in the Cartagena, Colombia, field office, but recently returned to the US. A woman who answered the phone at the DEA office in Cartagena said, "He's not in this office anymore." When told it was a reporter who was calling, she said, "We don't know where he is," and hung up.

One of the three sources familiar with the case said Irizarry was often assigned to work undercover and was highly effective at it. "He had a good reputation," the source said.

In 2010, Irizarry filed for bankruptcy protection, citing assets of $157,356 and debts of $424,868. In the filing, Irizarry identified his occupation as "federal agent" and gave the street address of the DEA in Miami as his work address. He included a pay statement from the DEA. He was discharged from bankruptcy in 2016.

Irizarry could not be reached for comment. At a gated rental community in Weston, Florida, where public records indicate he might reside, the manager said Irizarry had applied for an apartment recently but had never moved in. At an apartment that Irizarry once owned in Miramar, Florida, according to bankruptcy and property records, a resident said he had never heard of Irizarry and that someone else owned the apartment now. He declined to say more.

*Kaveh Kazemi / Getty Images*
Cartagena, Colombia.

The investigation into Irizarry comes as the DEA has been battered by multiple misconduct and corruption allegations. A New Orleans DEA agent and a local police officer attached to a DEA task force face charges from perjury to obstruction of justice to embezzling property seized from suspects.

In Brazil, as BuzzFeed News first disclosed, a DEA agent was accused of harassing a woman and sharing confidential law enforcement material with her. In a 2015 report on federal law enforcement and sexual misconduct, the Justice Department's Inspector General reported on several DEA "'sex parties' with prostitutes funded by the local drug cartels" at government-leased quarters. The scathing report said that seven DEA agents admitted to attending parties with prostitutes.

The scandal subsequently resulted in the suspension of seven agents for misconduct and prompted the resignation of agency's top administrator, Michele Leonhardt.

Additionally, another scandal could result in charges of obstruction of Justice and perjury along with an array of other accusations levied against a U.S. Drug Enforcement agent in New Orleans after members of a DEA task force were charged in the theft of drugs and cash stolen during federal drug raids.

The scandal has already produced guilty pleas by several other task force members.

The latest embarrassment involving the agency comes at a time when cocaine demand in the United States has surged.

Colombia remains the world's largest producer of cocaine and the top supplier of white powder imported into the United States, making the South American country a vital operating ground for efforts led by U.S. federal agents working to dismantle transnational drug trafficking networks.

Although DEA officials have not revealed the extent of the intelligence Irizarry allegedly leaked to drug traffickers, a spokesman acknowledged that Irizarry held a uniquely sensitive position and was party to classified law enforcement efforts in Colombia.

"The matter remains ongoing within the DEA disciplinary system, and we cannot comment at this time," DEA spokesman Melvin Patterson told The New York Times.
Get the latest news from the world of crime

Got a tip? You can email tips@buzzfeed.com. To learn how to reach us securely, go to tips.buzzfeed.com.

In 2015 and 2016 in Tampa, Florida, a DEA agent and a retired DEA agent pleaded guilty to charges related to trying to reduce a drug dealer's 30-year prison sentence. Prosecutors said the retired agent was paid more than $200,000 in cash, in a shopping bag, by the drug dealer's brother.

But the ongoing case in Colombia, the three sources told BuzzFeed News, may end up as one of the worst scandals to strike the agency. And in Colombia, the case could end up being a particular embarrassment for the agency. Last year, the DEA publicized a case in which it ran an undercover operation targeting the Colombian anti-corruption prosecutor Luis Gustavo Moreno. Last month he was sentenced in Colombia. Now, the US is trying to extradite him to face a federal indictment in court in Miami.

Meanwhile, cocaine production in Colombia is going gangbusters. The DEA said last summer that it expected Colombia's supply of cocaine to the US to reach levels not seen since 2007.

---

# Related:

## She Told The DEA Its Agent Was A Stalker. Then Things Got Really Bad.

buzzfeed.com

How a federal agent got away with terrorizing his Brazilian ex-girlfriend — even as she repeatedly begged the US government to stop him.

# Veteran DEA agent stationed in Colombia under investigation for passing intelligence to drug cartels: Report

April 22, 2018  |  Posted by: Michael Falzarano

- Twitter
- Facebook
- Google+
- LinkedIn



*Are you in a legal jam? Find a Lawyer, Bail Bondsman or Private Investigator on JammedUp.*

A veteran DEA agent is under investigation for allegedly passing off intelligence to Colombian drug traffickers, U.S. Drug Enforcement Administration officials revealed on Friday

Jose Irizarry, a former DEA agent who was stationed in Colombia, abruptly resigned his position with the agency Friday after the allegations surfaced,  per Aram Roston, of Buzzfeed News, who first reported the investigation.

Sources told the news site that the allegations against Jose Irizarry could compromise U.S. law enforcement's efforts to recruit confidential informants used to gather sensitive intelligence within the shadowy underworld surrounding international drug trafficking.

Any individual caught cooperating with authorities face certain death in countries such as Mexico and Colombia where ruthless drug cartels rule the landscape and hold massive influence.

Confidential sources remain a crucial mechanism for U.S. law enforcement officials to harvest vital intelligence for investigations against transnational drug trafficking organizations.

However, in recent years, the ability of U.S. Drug Enforcement Agency to protect the safety of informants has been seriously questioned in recent years after several scandals involving agent misconduct embroiled the agency.

Recently, Democratic lawmakers on Capitol Hill demanded an inquiry into DEA-led operations in Mexico, after U.S. law enforcement officials shared intelligence with Mexican authorities, which ultimately ended up in the hands of top cartel bosses, resulting in two deadly attacks.

Moreover, a 2015 report by the Justice Department's internal watchdog, implicated DEA officials stationed in Colombia for misconduct after several agents were busted attending sex parties paid for by drug cartels leaders over a period of several years.

The scandal subsequently resulted in the suspension of seven agents for misconduct and prompted the resignation of agency's top administrator, Michele Leonhardt.

Additionally, another scandal could result in charges of obstruction of Justice and perjury along with an array of other accusations levied against a U.S. Drug Enforcement agent in New Orleans after members of a DEA task force were charged in the theft of drugs and cash stolen during federal drug raids.

The scandal has already produced guilty pleas by several other task force members.

The latest embarrassment involving the agency comes at a time when cocaine demand in the United States has surged.

Colombia remains the world's largest producer of cocaine and the top supplier of white powder imported into the United States, making the South American country a vital operating ground for efforts led by U.S. federal agents working to dismantle transnational drug trafficking networks.

Although DEA officials have not revealed the extent of the intelligence Irizarry allegedly leaked to drug traffickers, a spokesman acknowledged that Irizarry held a uniquely sensitive position and was party to classified law enforcement efforts in Colombia.

"The matter remains ongoing within the DEA disciplinary system, and we cannot comment at this time," DEA spokesman Melvin Patterson told The New York Times.

JAIME TAMAYO LOPEZ
REGISTER No 19987-038
McRAE CORRECTIONAL FACILITY
P.O.DRAWER 55030
Mcrae Helena,GA 31055

LEGAL MAIL -- PRIVILEGED MAIL

CERTIFIED MAIL

7016 3560 0000 5142 4396

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA (FLSD)
U.S COURTHOUSE,299 East Broward Boulevard,
FORT-LAUDERDALE, FL 33301
ATT: CLERK OF COURT.

This correspondence originated
from McRae Correctional Facility
Said facility is not responsible
for the substance or cont...