**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**



FILED BY _PC_ D.C.

SEP 16 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**JAIME ALBERTO TAMAYO LOPEZ,**
    **Movant,**


                                           **CASE NO.:**
**Vs.**                               **1: 19-CV-22638-RNS**
                                       **1: 13-20899-CR-ZLOCH**


**UNITED STATES OF AMERICA,**
    **Respondent.**


<u>**SECOND REPLY TO THE GOVERNMENT'S RESPONSE**</u>

    **COMES NOW, JAIME ALBERTO TAMAYO LOPEZ, Movant,** _pro se_**, and, hereby files this SECOND REPLY TO THE GOVERNMENT'S RESPONSE. In support thereof, Movant respectfully submits the following:**

    **1. Again, with all due respect, the government, in an effort to obstruct any claim to which Movant may be entitled by law, has either very seriously misunderstood Movant's underlying Motion and claim or has deliberately engaged in yet another exercise designed to mislead this court.**

    **2. Although Movant utilized the traditional form entitled "Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in Federal custody" Movant did <u>not</u> file a traditional § 2255, nor he is attempting to file a second or successive § 2255. Much to the contrary, <u>a cursory glance at the top of each additional page of Movant's Motion, clearly reflects the following:</u>**

1

"Motion Pursuant to Title 28 U.S.C. § 2255 (f) (4)"

3. Specifically, Movant has invoked Subsection "(f) (4)" of Title 28 U.S.C. § 2255 which states, in relevant part, that:

"..... (f) A 1 year period of limitation shall apply to a Motion under this Section. The limitation period shall run from the latest of --

(4) <u>the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence....</u>"

4. In accordance with the foregoing, Movant hereby relates precisely how his Motion brought pursuant to Subsection (f) (4), is timely filed and is otherwise in full compliance with the statue and its criteria.

## <u>MOVANT'S PRIOR EXPERIENCE</u><br><u>WITH THE FEDERAL CRIMINAL SYSTEM JUSTICE</u>

5. In her response, Assistant U.S. Attorney Monique Botero correctly asserted that Movant "signed a "Factual Proffer ... wherein he admitted, among other things, that he was in fact guilty of the offenses charged in both Counts 1 and 2 of the indictment ... Movant also admitted in his Factual Proffer that he did in fact provide post-Miranda statements ... in addition, the Factual Proffer outlined the events of the crimes committed by Movant."

6. By way of explanation, this is <u>not</u> Movant's "first rodeo" with the federal government. In April of 1994, Movant pled guilty and eventually spent ten years in federal prison, so he is very well aware of the extent to which the federal government will go in order to win a conviction. This includes, and is certainly not limited to, the deliberate and knowing use of perjured testimony, the payment of federal inmates to "testify" in order to obtain a sentence reduction and even

2

the deliberate use of fabricated or known false evidence. <u>That was the reason why Movant chose since the very beginning of his case cooperate with the United States Government and provided a substantial cooperation in all sense about his case as the United States Assistant Attorney Mrs. Botero is very well aware. Unfortunately the United States Government did not fulfill his compromise and did not give any benefit to Movant. (Movant is not doing any claim of innocence because movant plead guilty as a part of his substantial assistance and cooperation with the United States Government.)</u>

## MOVANT DELIBERATELY ENSURED THAT ALL OF HIS ACTIVITIES WERE BEYOND THE JURISDICTION OF THE UNITED STATES

7. Prior to Movant's current indictment, he had been conducting his business <u>outside</u> of the United States. Specifically, because of his previous experience with the United States, Movant deliberately constrained his activities between Colombia and Europe. Movant made a deliberate choice that <u>none</u> of his conduct would be subject to the jurisdiction of the United States. As such, Movant was beyond surprised when he was visited by federal agents in prison in Colombia on July 18, 2013, who informed him that he had been indicted in the United States and was expected to be extradited from Colombia within the following two months. After spending thirty-six months in La Picota prison in Colombia, Movant was eventually extradited to the United States.

8. Upon his arrival in the United States, with a prior federal conviction, Movant knew that it was futile to even attempt to challenge the might and unlimited resources of the federal government, especially in a drug conspiracy case. Therefore, Movant readily acknowledges that when he was confronted with the instant federal charges, he did indeed sign the factual proffer that had been

3

prepared, solely in order to cut his losses, reduce his sentencing exposure and to reach a favorable plea agreement with the United States. As previously stated, Movant went out of his way to ensure that <u>none</u> of his activities could have been subject to the jurisdiction of the United States and therefore knew only too well that whatever "evidence" the federal government allegedly had against him, could only have been manipulated in order to indict him.

9. According to the recently-revealed investigations, DEA S/A Jose Irizarry had been committing crimes from as early as 2012. However, at the time of Movant's guilty plea on <u>March 18, 2016</u>, Movant was completely unaware of the corrupt activities of S/A Irizarry. Movant always thought and believed that S/A Irizarry was an honest and upstanding federal employee who was required to be beyond reproach in his duties. As such, Movant's sole intent at the time was to resolve this case, as best as possible and as quickly as possible.

<u>MOVANT HAS NOT ASSERTED A CLAIM OF "ACTUAL INNOCENCE" BUT HAS
ASSERTED AND DEMONSTRATED THAT S/A JOSE IRIZARRY UNILATERALLY
AND MALICIOUSLY "MANUFACTURED JURISDICTION"</u>

10. The government attempts to obfuscate the thrust of Movant's claim by asserting that "Movant is not actually innocent." <u>Movant readily reminds this court that he is not making a claim of actual innocence.</u> To the contrary, Movant has advanced the claim that the Government, by way of S/A Irizarry, <u>unilaterally</u> "manufactured jurisdiction" in order to indict Movant. Specifically, S/A Irizarry had investigated Movant and his associates, fellow Colombians John Alexander Herrera Nariño, Jose Luis Uribe Arango and Miguel Brandon Peñaranda Diaz and was very well aware that <u>their activities had nothing to do with the United States and were thus well beyond the jurisdiction of the United States.</u>

11. Therefore, in order to "manufacture jurisdiction" and create a federal case against Movant, S/A Irizarry developed a plan which would ensnare Movant. S/A Irizarry infiltrated Movant's associates in Colombia by the use of his informant named Jesus Martinez, who is the brother-in-law of Movant's associate, Jose Luis Uribe Arango, who played a very special role in this conspiracy. S/A Irizarry then made contract with Jesus Martinez, John Alexander Herrera Nariño, Jose Luis Uribe Arango and Miguel Brandon Peñaranda Diaz, who provided the money for the wire-transfer and drug-trafficking venture. S/A Irizarry was supposed to collect this money and transport it from Amsterdam, in the Netherlands, to Lima, Peru. <u>Specifically, the agreement was that S/A Irizarry was to personally transport a total of €2,150,000 Euros himself.</u> Movant had been deliberately using Euros instead of U.S. currency - specifically in order to avoid the jurisdiction of the United States.

12. In spite of having already agreed to deliver the entire amount of money to Peru, in order to effect his nefarious plan against Movant, S/A Irizarry then <u>unilaterally</u> sent a wire transfer of $250,000 from a bank account in Amsterdam to a bank account in Doral, South Florida, which had belonged to the DEA. After sending the wire transfer, S/A Irizarry then took the remainder of the money, which was approximately €1,800,000 Euros, transported it and delivered it to Rodrigo Mora Olaya, a Colombian who was living and working in Lima, Peru, who was Movant's associate in their illicit drug business in Lima, Peru.

13. S/A Irizarry's intent to <u>unilaterally</u> "manufacture jurisdiction" is therefore patently clear. Just as he possessed the authority to travel with and deliver €1,800,000 Euros, he could have travelled with and delivered <u>the total amount.</u> Therefore, the specific act by S/A Irizarry himself, of <u>unilaterally</u>

effecting the wire transfer of $250,000, without any knowledge, collaboration or consent by Movant or any of his partners, effectively "manufactured" federal jurisdiction, which then permitted S/A Irizarry to maliciously create a conspiracy case against Movant.

14. It is very strange that Movant was the only person in his organization to be indicted in this conspiracy because there were many other people involved that S/A Irizarry chose not to indict. The main one of them was Movant's right-hand man and associate, Rodrigo Mora Olaya. It is now obvious that after S/A Irizarry successfully "manufactured jurisdiction," he then recruited Rodrigo Mora Olaya as an informant and witness against Movant in this conspiracy which made it impossible for Movant to claim innocence or to even entertain the thought of going to trial.

15. The foregoing underlined unilateral transaction by S/A Irizarry clearly shows that he was the only agent who had the authority to direct this investigation and it was he who performed the single transaction in order to create federal jurisdiction. Movant is not aware and there is no evidence to suggest that there was any other agent involved in any meetings or agreements to move any money or traffic any drugs in the conspiracy for which Movant was charged. Moreover, the Affidavit in support of Movant's indictment in federal court was prepared and signed by S/A Irizarry and there was no other agent who asserted any facts or statements in regard to this conspiracy. The only two other agents that Movant knew of and spoke with were James Bugda and John Marrollo who went to the Colombian Attorney General's Office to notify Movant of his federal case on July 18, 2013, since that precisely moment Movant agree to cooperate with the

United States Government in order to get a good deal and a reduction on his sentence that was the contact that Movant had with the federal Agents.

<u>MOVANT'S § 2255 (f) (4) MOTION IS TIMELY</u>

16. As previously stated and described at the beginning of this Response, Movant's § 2255 (f) (4) Motion is timely-filed and is otherwise in full compliance with the statute governing this Motion. Movant had no desire to appeal either his guilty plea, conviction or sentence and never so. To be sure, Movant never intended to file a § 2255 because he realized that he did not have any viable grounds to pursue. Furthermore, at all times, Movant was completely unaware of S/A Irizarry illegal activities. However, after learning about the corrupt activities of S/A Irizarry which had been widely publicized, Movant decided to expose S/A Irizarry's malicious intent in this case and seek justice from this court.

17. Movant first became aware of the corrupt activities of S/A Irizarry from an article entitled "De Heroe a Villano" ("From Hero to Villain"), which had been published in the <u>January 20, 2019</u> edition of "Semana," ("Week"), a Colombian magazine which is distributed on a weekly basis. In yet another effort to deceive this court, the government asserts that "[t]he earliest written article that Movant attaches is dated April 20, 2018, … [t]herefore, with due diligence, the earliest Movant could have been made aware of the corruption investigation against Special Agent Irizarry was well over a year prior to the instant Motion being filed." This argument is ridiculous on its face and is an affront to this Movant.

<u>THE DEDICATED SEARCH OF THE INTERNET ARCHIVES BY MOVANT'S NIECE AND HER DISCOVERY OF ARTICLES ABOUT THE INVESTIGATION OF S/A IRIZARRY</u>

18. Movant is currently confined in a privately-run facility in contract with the Federal Bureau of Prisons which houses only immigrant inmates who will

eventually be removed to their home countries. As such, there is precious little current legal material, much less current daily periodicals and no access to the internet. Movant regularly obtains a copy of "Semana" from his family in order to stay abreast of the news in Colombia. <u>As such, the January 20, 2019 edition of "Semana," was the first opportunity that Movant had to learn about the investigation of S/A Irizarry.</u> As Movant has previously stated, he, from within the confines of the McRae Correctional Facility, endeavored to find and did obtain by any means necessary, every piece of information related to the investigation of S/A Irizarry, his corrupt activities and his criminal case which eventually resulted in his dismissal from the Drug Enforcement Administration. To be sure, after learning in the "Semana" article about the investigation of S/A Irizarry, Movant specifically instructed his niece, Mrs. Angela Martinez, who resides in Boston, Massachusetts, to search for, locate and immediately send to Movant in prison, each and every article she could find about S/A Irizarry. It is only because of the dedicated search of the internet archives by Movant's niece that Movant eventually learnt about all of the previously unknown articles about the investigation of S/A Irizarry that were available online. These included the article dated <u>April 20, 2018</u> and the article about the federal criminal case involving DEA Confidential Informant Gustavo Yabrudi, who pled guilty to his illegal activities with S/A Irizarry. Movant's accumulation of these articles formed the basis of Movant's motion which he then submitted to this court in support of his timely-filed Motion Pursuant to Title 28 U.S.C. § 2255(f)(4).

19. Movant's Motion Pursuant to Title 28 U.S.C. § 2255(f) (4) was submitted on <u>June 18, 2019</u>, which is well within the one-year period of limitation from "the date on which the facts supporting the claim or claims presented could have been

discovered." Approximately <u>five months</u> elapsed between Movant's initial discovery of the fact of the criminal investigation of S/A Irizarry and Movant's filing of his § 2255(f)(4) motion. Simply put, there is no doubt whatsoever that Movant has exercised "due diligence" in presenting his claims.

### <u>S/A IRIZARRY'S UNILATERAL TRANSACTION WAS DESIGNED TO MANUFACTURE JURISDICTION AND WAS THUS AN EGREGIOUS VIOLATION OF MOVANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT</u>

20. The government knows only too well that the corrupt activities of its federal agents are well-guarded secrets. Therefore, it was highly unusual for the corrupt activities of S/A Irizarry to be publically exposed. Now that it is well within the public domain and cannot be denied, the corrupt activities of S/A Irizarry may have jeopardized many of the cases in which he was involved. Movant's case is definitely one of them because S/A Irizarry's corrupt actions of deliberately "manufacturing jurisdiction" was an egregious violation of Movant's Due Process rights under the Fifth Amendment and respectfully submits that they overwhelmingly qualify as "facts supporting the claim or claims presented" in Movant's § 2255(f)(4) motion.

1. 21. The various published cases cited by the government, where motions were similarly brought pursuant to § 2255(f) (4), pale in comparison to the instant case. Whereas the government's cited cases involve case-specific legal developments <u>after</u> they had been legitimately litigated, Movant's case involves the fundamental violation of his Due Process rights because <u>the very foundation of Movant's case had been maliciously established from the very beginning</u>. Specifically, without S/A Irizarry's deliberate act of extracting only $250,000, out of the total of €2,150,000 Euros

destined for Peru from the Netherlands, and personally ensuring that the aforementioned $250,000 was sent by wire transfer from a police-controlled bank account in the Netherlands, to a DEA-controlled bank account in Doral, Florida, the United States simply would have had no justification to assert jurisdiction in this matter. It is abundantly clear that S/A Irizarry's <u>unilateral action</u> in this case is the proverbial legal "smoking gun." Why did he wire only $250,000 from the Netherlands to Florida, when he was perfectly capable of transporting and delivering the entire €2,150,000 Euros to its intended and agreed upon destination of Peru? The answer is very clear: <u>he unilaterally did so for the sole purpose of manufacturing jurisdiction in order to ensnare this Movant.</u>

<u>CONCLUSION</u>

19. In light of the foregoing, Movant respectfully requests that this court <u>reject</u> the government's Response, find that Movant's § 2255(f)(4) motion was timely-filed, that it sufficiently argues a constitutional violation which is cognizable pursuant to 28 U.S.C. § 2255 and grant any other relief that it deems proper, necessary, just and equitable.

Respectfully Submitted,                                 Date: September 10, 2019

_____
Jaime Alberto Tamayo Lopez
11500-104   L02-207L
McRae Correctional Facility
P.O. Drawer 55030
McRae Helena, GA 31055

## CERTIFICATE OF SERVICE

I, JAIME ALBERTO TAMAYO LOPEZ, HEREBY CERTIFY, that a true and correct copy of the foregoing was placed in the McRae Correctional Facility Legal Mailbox, with proper, first-class postage affixed, addressed to the Office of the U.S. Attorney, Southern District of Florida, 99 NE 4th Street, Miami, FL, 33132–2111, on this 10th day of September, 2019.

Respectfully Submitted,

Jaime Alberto Tamayo Lopez
11500-104   L02-207L
McRae Correctional Facility
P.O. Drawer 55030
McRae Helena, GA 31055



CERTIFIED MAIL

7017 2680 0000 5394

JAIME TAMAYO LOPEZ
REGISTER No 19987-038
McRAE CORRECTIONAL FACILITY
P.O.BOX 55030
Mcrae Helena,GA 31055

...pondence originated
...e Correctional Facility
...ty is not responsible
...stance or contents

UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA
OFFICE OF THE CLERK ROOM 8N09
400 North Miami Avenue
Miami,FL 33128-7716

LEGAL MAIL -- PRIVILEGED MAIL

**McRae Correctional Facility**
**McRae, Georgia 31055**

The enclosed letter was processed through mailing procedures for forwarding to you. The letter has has neither been opened nor inspected.
If the writer raises questions or problems over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return this enclosure to the above address.

DATE _9/10/19_   STAFF _SK_