UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-22638-CV-SCOLA
CASE NO.: 13-20899-CR-SCOLA
MAGISTRATE JUDGE REID

JAMIE ALBERTO TAMAYO LOPEZ,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

Movant has filed a *pro se* motion to vacate under 28 U.S.C. § 2255 attacking the lawfulness of his conviction in the underlying criminal case. As discussed below, the motion should be dismissed as untimely.

### I.     Background

A.    Underlying Criminal Case

In 2013, a grand jury indicted movant for: (1) count 1--conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and (2) count 2--conspiracy to distribute more than five kilograms of cocaine knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959(a)(2). [Cr-ECF 3].

Pursuant to a written plea agreement ("agreement"), movant pleaded guilty to both counts. [Cr-ECF 75]. Pertinently, the agreement provides that the "value of the laundered funds was $250,00 and [that movant] knew that the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance." [*Id.* p. 5].[1] The agreement also contains a broad appeal waiver. [*Id.* p. 6].

The agreement incorporates a factual proffer ("proffer"). [*Id.* pp. 6-9]. The agreement adds that the government would be able to prove the facts in the proffer if the case went to trial. [*Id.* p. 6].

The proffer states that movant, a Colombian citizen, "has been identified as being responsible for coordinating the transportation of cocaine from laboratories in Peru and Colombia to North America and Europe." [*Id.* p. 7]. Further, the proffer states that, in July 2012, movant met with certain individuals and agreed to participate in a cocaine deal involving the shipment of 500 kilograms of cocaine from Peru to Portugal. [*Id.*] Likewise, the proffer states that movant arranged for a shipment of 125 kilograms of cocaine from Peru that was seized in Houston, Texas in January 2013. [*Id.*]

---

[1] All page citations for ECF entries refer to the page-stamp number located at the top, right-hand corner of the page.

Moreover, the proffer states that, in October 2012, one of movant's coconspirators, Miguel Penaranda Diaz ("Penaranda"), "participated in the related laundering of about $1.1 million which had been generated through illegal activity." [*Id.*] "$250,000 was wired to bank accounts in the United States, including two banks in Doral, Florida[.]" [*Id.*] "The remaining $850,000 was transported in cash from . . . the Netherlands to . . . Peru by a confidential source working with the . . . (DEA)." [*Id.* pp. 7-8].

The proffer adds that "[t]his conduct took place both in the Southern District of Florida, as well as outside the Southern District of Florida, causing effects in the Southern District of Florida." [*Id.* p. 8].

The district court held change-of-plea and sentencing hearings. [Cr-ECF 74; 94]. The guideline imprisonment range was 151 to 188 months. [Cr-ECF 94, p. 4]. The court imposed a sentence of 120 months' imprisonment. [*Id.* p. 10]. This term consisted of a statutory-minimum-120-month sentence on count 2 and a 120-month sentence on count 1, to run concurrently. [*Id.* pp. 7, 10-11].

The court entered judgment on June 30, 2016. [Cr-ECF 91]. Movant did not appeal.

B.  This § 2255 Case

The instant § 2255 motion is dated June 18, 2019. [Cv-ECF 1, p. 18]. Movant contends that "DEA Special Agent Jose Irizarry" "was a corrupt agent who illegally

'manufactured jurisdiction'[] in order to create a federal case against [movant]." [*Id.* p. 4]. In support, movant alleges that movant conspired with other individuals, including Penaranda, to "send cocaine to Europe hidden [in] fruits" in exchange for €1,800,000. *See* [*id.*] pp. 5-6. Movant also alleges that Irizarry and certain individuals agreed to carry the money for the cocaine shipment directly from Europe to Peru. *See* [*id.* p. 7]. Further, movant alleges that Irizarry went to Europe to obtain the money. [*Id.*] However, movant continues, "instead of carrying it directly to Peru as previously agreed," Irizarry "wired $250,000 from a bank account in Holland to an account in Miami, Florida." [*Id.* pp. 7-8]. Movant adds that Irizarry "personally carried the remaining [money] . . . to . . . Peru." [*Id.* p. 8]. *See also* [Cv-ECF 15, p. 5].

Movant contends that Irizarry knew that "carrying the money directly from the Netherlands to Peru would deprive the United States of any jurisdiction over such a transaction, thus there would be no federal crime." [Cv-ECF 1, p. 8]. Thus, Irizarry "created this federal crime himself when he, on his own volition, . . . transferred [the] $250,000. . . to an account in Miami Florida." [*Id.* pp. 8-9]. Irizarry did this to "personally assure [movant's] federal [i]ndictment and to advance his personal agenda." [*Id.* p. 9]. Apparently, this agenda involved Irizarry's wish to "make a name for himself . . . [and] assist his Colombian drug-trafficking associates in getting their criminal cases resolved." *See* [*id.* p. 5]. Movant contends that neither

he nor his "partners" knew that Irizarry wired the money to an account in South Florida. [*Id.* p. 8]. *See also* [Cv-ECF 15, pp. 5-6].

To support these allegations, movant submits a handful of newspaper articles. [Cv-ECF 1, pp. 19-34]. The articles, some of which date to April 2018, discuss Irizarry's abrupt resignation from the DEA on the heels of corruption allegations. According to the articles, these allegations included his: (1) passing of intelligence to Colombian drug traffickers; (2) opening of bank accounts in Florida to launder money from drug sales; and (3) falsifying DEA paperwork to pocket money used to pay informants. *See, e.g.*, [*id.* pp. 21, 23-25, 27, 32].

Movant contends that he did not learn of any of these articles until January 20, 2019. [Cv-ECF 15, pp. 7-8]. This is because his family regularly sent him a copy of the newspaper that the article appeared in. [*Id.* p. 8]. Movant did not have immediate access to the other articles because, at his prison, "there is precious little current legal material, much less daily periodicals[,] and no access to the internet." [*Id.*] Movant contends that, once he read the January 20, 2019 article, he immediately instructed a family member to find any other such articles. [*Id.*]

Noting that the motion appeared untimely, the court issued a limited show cause order directing the government to file a response addressing only the issue of timeliness. [Cv-ECF 6]. The order further permitted movant to file a response addressing the same issue. [*Id.*] The government responded and contended that the

5

motion was untimely. [Cv-ECF 13]. Movant filed a response that essentially repeated arguments made in his § 2255 motion. [Cv-ECF 8]. Movant later filed a reply in which he essentially repeated arguments raised in his motion and response. [Cv-ECF 15].

## II.    Analysis

Pertinently, 28 U.S.C. § 2255(f) provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

> (1) the date on which the judgment of conviction becomes final; [or]

***

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, the district court entered movant's judgment of conviction on June 30, 2016. Movant did not appeal. Thus, for § 2255(f)(1) purposes, the judgment became final fourteen days later on July 14, 2016. *See Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011); *Ramirez v. United States*, 146 F. App'x 325, 326 (11th Cir. 2005) (per curiam) (citing Fed. R. App. P. 4(b)(1)(A)(I), (6)). However, movant did not file the instant motion until June 18, 2019. Therefore, because movant filed his motion roughly two years and eleven months after his judgment of conviction became final, the motion is untimely under § 2255(f)(1).

Movant contends that his motion is timely under § 2255(f)(4). This is because, in his words, he submitted "newly discovered evidence concerning . . . Irizarry." [Cv-ECF 1, p. 16].

Section 2255(f)(4) "does not require the maximum feasible diligence, but only 'due,' or reasonable, diligence." *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002). "Due diligence therefore . . . require[s] a prisoner. . . to make reasonable efforts [to discover the new facts underlying his claims]." *See id.* Although this inquiry is "individualized," *see id.*, the prisoner's subjective belief regarding the date on which the new evidence became available to him does not control. *See Trucchio v. United States*, 553 F. App'x 862, 864 (11th Cir. 2014) (per curiam) (citing *Aron*, 291 F.3d at 711). Movant bears the burden to adequately allege due diligence under § 2255(f)(4). *See id.*; *cf. Johnson v. United States*, 544 U.S. 295, 308 (2005).

Here, movant has not adequately alleged that he bases his motion on new facts or that he exercised due diligence in discovering Irizarry's alleged "manufacture of federal jurisdiction." Movant pleaded guilty on March 18, 2016. The proffer states that Penaranda, his admitted coconspirator, participated in the laundering of $1.1 million. [Cr-ECF 75, p. 7; Cv-ECF, pp. 5-6]. Further, the proffer states that $250,000 was wired to bank accounts in the United States, including two banks in Doral. [Cr-ECF 75, p. 7]. Additionally, the proffer states that a DEA agent transported the remaining $850,000 to Europe. [*Id.* pp. 7-8]. These facts reasonably would have

notified movant to investigate the possibility that Irizarry unlawfully wired to South Florida some of the money required to ship the cocaine from Colombia to Europe. However, movant does not allege that he took any steps to investigate this possibility at that time.

Likewise, movant has not explained why he could not have filed a § 2255 motion at that time. The factual predicate of the instant motion is that the transfer of the money to South Florida resulted in the "manufacture of federal jurisdiction," and the factual proffer states that a DEA agent wired money to Doral. Movant has not adequately explained why he needed further knowledge of Irizarry's alleged corruption to allege this claim or how the news articles supply this knowledge.

Movant's contention that he was "completely unaware of the corrupt activities of [] Irizarry" until his relative sent him the January 20, 2019 article is unavailing. *See* [Cv-ECF 15, pp. 4, 7]. "The statutory language, 'the date on which the facts . . . could have been discovered,' indicates that the one-year period begins on the first day the evidence becomes reasonably available[.]" *See Trucchio*, 553 F. App'x at 864. As discussed, the record reflects that movant knew of the essential facts underlying his claim no later than March 2016. The apparent contention that movant did not "[first] recognize[] their legal significance" until he discovered the articles is irrelevant. *Compare Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1157 (11th Cir. 2014) (discussing 28 U.S.C. § 2244(d)(1)(D), a similar provision that applies

8

under the statute of limitations for state habeas petitioners (citations omitted)), *with*

*Walker v. Martin*, 562 U.S. 307, 318 (2011) (noting the similarity between §

2255(f)(4) and § 2244(d)(1)(D)).

Movant's motion would be untimely even if the undersigned assumed that he

needed the articles to allege his claim. Movant acknowledges that his relatives sent

him newspapers in prison and conducted research for him. Therefore, he could have

notified them to start researching Irizarry's potential corruption in March 2016. A

diligent search would have uncovered the April 2018 articles that movant submits

with his motion. However, movant filed his motion in June 2019, i.e., approximately

14 months after this date.

In sum, movant has not adequately alleged that he bases his claim on new

facts or that he made reasonable efforts to discover the allegedly new facts on which

he bases his claim. Thus, because he filed his motion over one year after his

judgment of conviction became final, it is untimely.[2]

### III.   Evidentiary Hearing

Movant is not entitled to an evidentiary hearing. As discussed above, "the

motion and the files and records of the case conclusively show that [movant] is

entitled to no relief[.]" *See* 28 U.S.C. § 2255(b). On this record, there is no basis to

---

[2] Movant does not contend that he is actually innocent. [Cv-ECF 15, p. 4].

infer that movant would be able to develop facts at an evidentiary hearing sufficient to overcome § 2255(f)'s time bar.

### IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2255 Proceedings.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, in view of the entire record, the undersigned denies a certificate of appealability. If movant disagrees, he may so argue in any objections filed with the district judge. *See* Rule 11(a), Rules Governing § 2255 Proceedings ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## V.     Recommendations

Based on the foregoing, it is recommended:

1.     That movant's § 2255 motion [Cv-ECF 1] be dismissed as untimely;

2.     That no certificate of appealability issue; and

3.     That judgment be entered and the case closed.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 23rd day of September, 2019.

_____
UNITED STATES MAGISTRATE JUDGE


Copies furnished:

Jaime Alberto Tamayo Lopez
19987-038
McRae
Correctional Institution
Inmate Mail/Parcels
Post Office Drawer 55030
McRae Helena, GA 31055
PRO SE

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov